The United States v. Tauck is the next case for argument. Mr. Hemmant. Thank you, Your Honor, and may it please the Court. The District Court procedurally erred in imposing its 432-month sentence in this case by failing to sufficiently explain the basis for the Court's 72-month variance above the high end of the guidelines, making clearly erroneous factual findings and failing to make certain findings, and basing the variance on insufficient justifications. As to the first point, the District Court failed to sufficiently explain, as this Court's precedent requires, why it was imposing a variance, stating only that certain conduct in China in which Mr. Tauck engaged was, quote, serious, and the government makes a point in its brief about the fact that this is a 20% or 18%, as the government argues, variance. And I just want to note that 20%, as we argue, is not insubstantial, and even in Castillo, the Court described a 30% variance as substantial and a large variance that typically requires more careful thought. And I think something also gets lost when you talk about just the percentages, and as Castillo discusses that the relative is, I guess, the preferred way to look at a variance, but you can also look at it in absolute terms, and as that case recognizes, sometimes relative can be misleading, including where, if it's, for example, a probation sentence, it will always be a 100% variance. And similarly, when it's a very high sentence, as we have here, 432 months, 20% of 360 is a lot higher. When we're looking at the rationale for the sentence given, the Court did not limit itself to conduct that occurred overseas. It walked through, this is aggravated and not accounted for in the guidelines, including the period of time, the vile nature of the communications that were shared at the sentencing. The Court also emphasized that this particular defendant was in a place of trust or in a position of trust, and it had violated that trust with someone that had been entrusted to him. The Court also talked about the nature of the collection, and lastly, the Court also emphasized that this was the first time where they had seen a producer use someone entrusted to him. So, those were the rationale for going this beyond the guideline range. And so, do we, are those factors, is your opinion that that rationale is not sufficiently explained? Your Honor, our argument is that the conduct that occurred in China is what the District Court specifically based the variance on. But that's not what the record supports. I don't mean to jump in, but that's not what the record supports. That was one factor, but Judge Pryor just identified the factors directly from the transcript that the Court said it was relying on to go above the guidelines. Your Honor, on page, or A67, the Court talks about the nature of the offense as one of the 3553A factors he has to consider, and mentions some of the things that Judge Pryor mentioned, including that the conduct is aggravated in time, the nature of the images and videos, et cetera, et cetera. He's talking about the offenses of conviction. Then he mentions, on A71, so he never says there that he's going to go over the guidelines because of those things. He, in fact, says that based on that factor and other factors he discusses on page A68, he's arriving at a substantial sentence within the guideline range. So... But then you're skipping page A69. So I explore these general statutory factors, and now I want to pinpoint what this conduct is all about, after looking at everything. And that's when he goes into what Judge Pryor just articulated, making it crystal clear why he thinks this warrants an above-guideline sentence. Your Honor, from A69 to A70, and even into A... Yeah, from A69 to A70, the court discusses... He first talks about the general factors, including nature of the offense. Then when he says he's pinpointing the conduct that this... Or the conduct the production counts are all about, he goes through count one, count two of the indictment, the stipulated offenses. And so he's talking about, in that section, he's talking about the offenses of conviction and the aggravated nature of those... That conduct and why that brings him to the top of the guidelines. But then he makes it clear on A70, and also on A73, that while normally all the facts involved in the offenses of conviction would bring him to the top of the guidelines, it's the conduct in China that's the factor that he's considering going above the guidelines. No, it says there on page 70, and then one factor that the government mentioned that is not included in the guidelines is. But before we get to page 70, the judge has walked through other factors that are not included in the guidelines. Your Honor, I don't believe he says that those factors are not included in the guidelines. He says he walks through the conduct, but the only specific conduct he says in the transcript it's not included in the guidelines are, is the conduct in China. So he walks through those other aggravating facts, but he doesn't say that those aren't included in the guidelines, so that's why I'm going above the guidelines. But he does go on to say, he mentions the China conduct, and then he says, which we get to in a moment, why that alone wouldn't be sufficient. But he goes on to say, now to go on, and he goes into more detail about the extensive nature of the conduct. He refers to where the extensive nature is laid out in the pre-sentence investigation report and admitted to in the plea. He talks about the vile nature. I don't understand why that's not sufficient. Well, Your Honor, because he's still talking about, even in that discussion, he's talking about the offenses of conviction, and he's talking about why it's aggravated and different aggravating facts. Exactly. He's talking about the offense of conviction. But he made it clear at the beginning that, if considering that, he's only going to the top of the guidelines. So then when he talks about the China conduct, he specifically says, that's a factor I'm considering going above. He never says, these other aggravating facts in the case are something that I'm considering going above the guidelines. But he explains, though, that I am going, I'm varying from the top to give an extra period of time for that conduct, you know, and he says, and for just the overall extensive vile repeated conduct. Yes, he does say that, Your Honor, but that contradicts his earlier discussion where he makes it clear nature of the offense is one of the factors he's considering going to the top of the guideline range, but not above. So when he says on A73, I think that normally, from what I see here, a sentence at the high end would be appropriate. And then he says, the whole matter of all the facts here warrant a sentence of at least the top. Then he says, and as I said, there's certain conduct that occurred in China which is not considered. So that's where he's saying, all the facts involved, including the offense conduct, the conduct in China, I'm going to at least the top. But the China conduct is what's putting me over the top. And then the statement he makes at the end about also the vile repeated conduct, our position is that contradicts his discussion where he says the nature of the offense only brings him to the top of the guidelines. And I see that I have less than two minutes remaining, so if there are no further questions, I would like to reserve my remaining time for rebuttal. Certainly, counsel. Thank you. Mr. Peabody. Good morning. May it please the Court. The district judge explained the reason for its variance, defendant's conduct in China, and the overall vile nature of his conduct. If there's one through line from Gall to this Court's cases, it's this. The lower the variance, the less the demand for an explanation. And here, with just an 18% variance or two levels . . . Is it sensible to talk about this?                     I think part of our argument tries to follow this Court's precedence in talking about level increases and percentage variances, understand it's six years. I think the six years based on the China conduct alone to say nothing of the overall aggravating nature of the offense is not only more than substantively reasonable, but certainly more than procedurally reasonable. There was nothing vague about what the judge meant by the conduct in China. The sentencing record points to only one meaning. After fleeing there, the defendant continued to traffic child pornography, glorified some of the worst images conceivable to a woman while there, a woman who was objecting as he did so, and he discussed purchasing a child to rape. It strains credulity that anyone in the courtroom wouldn't know exactly what the judge meant in referring to defendant's conduct in China. The District Court did not need to recount all the horrific details to issue a procedurally sound sentence. Also, there was nothing contradictory about the judge's comments regarding the aggravating nature of the conduct. It's rational to describe conduct generally under certain statutory factors, then drill down and find the devil in the details. That's what the court did here. Exploitation of a minor, sharing it with others, bad enough, but of a four-year-old relative trusted to your care, coupled with the messages about this relative and others, that's incredibly aggravating. Unless the court has any questions, this court should affirm the defendant's sentence. Thank you, counsel. Anything further, Mr. Hammer? So the one thing I would say in response to the government's argument is that, again, when explaining a variance, especially a variance of six years that's already above the top of a very long sentence of 360 months, while we could have an argument about what's sufficient and what's not, at minimum the judge has to explain what exactly he's relying on and why . . . the most important part is why it supports a variance. From the transcript . . . . . . that they just had the agent testify about, and that he referred to the supplemental PSR for it? Judge, it's not our position that he had to say each word that was mentioned in the messages or anything like that, but that he did have to at least specify that he is basing his variance on either the messages or the video of child pornography or both. Why wouldn't the reference to the supplemental PSR filing that detailed the text messages be sufficient? Because that filing included both the messages sent in the context of the offense conduct, which he said only warranted a high end of the guideline sentence, and messages sent while in China, and something being sufficient to go higher . . . But when he says it's the China conduct and he refers to a supplemental PSR that details text messages from China, why wouldn't that be sufficient? Emails that details offensive, vile, aggravating text messages. Briefly, Your Honor, because I see my time is up, but the reason that is is because when he refers to that supplemental PSR, it's while he's discussing the offenses of the eviction. So it's when he talks about the paragraph in the plea agreement that admits certain things, he talks about the paragraph in the PSR that talks about the offense conduct, and then he refers also to the supplemental PSR. So that's all in his discussion of the offenses of conviction, which he said would only warrant a high end of the guideline sentence. Thank you very much. Thank you, Mr. Hammer. The case is taken under advisement.